# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SYLVIA RUDEK, as power of attorney for EUGENE HARTMAN and ESTELLE HARTMAN, <br><br> Plaintiffs, <br><br> v. <br><br> PRESENCE OUR LADY OF THE RESURRECTION MEDICAL CENTER, PRESENCE RESURRECTION MEDICAL CENTER, HUMANA, INC., and KELLIE PRISE, <br><br> Defendants. | No. 13 C 06022 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Sylvia Rudek, filed this action in state court on behalf of her parents, alleging various torts and state statutory violations in connection with the allegedly improper delivery of a notice of Medicare non-coverage to Eugene Hartman when he was an extended-care patient at Presence. According to the complaint, the notice was delivered to Eugene, who was not capable of understanding its contents when he signed and dated it. As a result the family missed the window for immediately appealing the impending coverage termination, and Mr. Hartman's coverage was suspended for 23 days, during which time he did not receive critical rehabilitative care following his stroke because the family could not pay for it out-of-pocket. Although the coverage was ultimately reinstated and extended, the family sued for damages caused by the interruption in coverage. The defendants, who removed the case to federal court (with no objection from plaintiff) on the basis of the Federal Officer Removal Statute, 28 U.S.C.

§ 1442(a)(1),[1] now move to dismiss the plaintiff's claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motions are granted.

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The plaintiff must plead sufficient factual content from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations in the form of legal conclusions, as well as threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Adams*, 742 F.3d at 728. Factual, but not legal, allegations are taken as true for purposes of the motion. *Id*.

## FACTS[2]

Eugene Hartman ("Hartman") was admitted to Our Lady of the Resurrection Hospital on July 1, 2011, after suffering a stroke or cardiovascular event. Hartman was insured by defendant Humana; his HumanaChoice PPO plain is a Medicare Advantage (MA) plan under Medicare Part C, *see* 42 U.S.C. § 1395e-21 *et seq*. He was moved to the skilled nursing unit on July 6, 2011, at which time the attending physician executed a medical surrogacy form because Hartman

---

[1] Under the federal officer removal statute, a removing defendant must show that it is a (1) "person" (2) "acting under" the United States, its agencies, or its officers (3) that has been sued "for or relating to any act under color of such office," and (4) has a colorable federal defense to the plaintiff's claim. 28 U.S.C. § 1442(a); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-81 (7th Cir. 2012) (citing *Mesa v. California*, 489 U.S. 121, 132-34 (1989)). According to Presence: "This action is removable pursuant to 28 U.S.C. § 1442(a)(1) as Presence has been sued for actions it performed pursuant to Medicare regulations prescribed by the Center for Medicare and Medicaid Services ("CMS"), and because Presence was acting under a signed agreement with CMS." Notice of Removal, Dkt. # 1 at 2.

[2] The facts have been augmented by the plaintiff in her response to the motions to dismiss. The Court may consider additional facts alleged in a response brief, if the facts are consistent with the allegations of the complaint. *Help At Home, Inc. v. Med. Capital*, *L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001).

was "confused and unable to make decisions for himself." All medical treatment decisions were to be made by Estelle, Hartman's wife. Hartman was later moved to the extended-care unit at the hospital.

Hartman's family—Estelle and daughters Sylvia Rudek and Cynthia Hartman—arranged for Hartman to go to Church Creek Skilled Nursing Facility for rehabilitative care following his hospital stay. On the date of the transfer, July 20, 2011, Cynthia arrived at the hospital in the morning and sought out defendant Kellie Prise, a social worker on Hartman's team of caregivers, about the need for continuing rehabilitative care and Humana's coverage—topics of ongoing discussions between Prise and the family. Prise informed Cynthia that on July 18, 2010, Hartman had executed a Humana form entitled "Notice of Medicare Non-Coverage" ("Notice").

The Notice is a two-page form. At the top, under the patient's name and number is a notice stating: "The Effective Date Coverage of Your Current SKILLED REHABILITATION Services Will End: July 20, 2011." The Notice advises the patient of a right to immediately appeal, with continuing services during the pendency of appeal, if the appeal is requested "as soon as possible, but no later than noon the day before the effective date indicated above [*i.e*., by noon on July 19]." Thus, Hartman would have been given at most, one day (July 18-19), in which to request an immediate appeal. If that deadline were missed, another "expedited appeal" process was available, but coverage would not continue during such an appeal. No one in Hartman's family was told about the Notice (before Prise told Cynthia about it on the 20th); no family members were with him when he signed it or were ever contacted by phone or email, although Prise had easy access to their contact information. Prise instead determined that Hartman was capable of signing for himself.

When Cynthia learned of the Notice on July 20, Hartman already had been discharged. Cynthia informed Prise that Hartman could not make his own decisions and had a medical surrogate; Prise said that she was unaware of that, but that it did not matter because Hartman was capable of signing the form. Hartman was then taken by ambulance to Church Creek, where Estelle and Sylvia learned for the first time about the Notice and the impending termination of coverage. The family filed an expedited appeal of the termination of Hartman's skilled rehabilitation services. The appeal was successful, and coverage was reinstated after a 23-day lapse. In a March 15, 2012, letter to Sylvia Rudek, Humana stated, in regard to the Notice of July 2011, that "the member's health care surrogate should have signed the Notice of Medicare Non-Coverage," and that Humana would "file a quality complaint against Our Lady of the Resurrection Medical Center Extended Care Unit for wrongfully obtaining the member's signature."

But for the gap in rehabilitative treatment, the complaint alleges, Hartman would have recovered sufficiently to live independently. Instead he resides in an assisted living facility. He missed out on the opportunity to restore optimal speech, mobility, and brain function following his stroke because he did not receive necessary services.

Plaintiff Rudek sued on behalf of her parents[3] in state court, asserting the following theories of liability: (I) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (II) malfeasance; (III) misfeasance; (IV) promissory estoppel; and (V) [4]

---

[3] Rudek also sued on behalf of her mother, seeking to recover the additional cost of her residence in the assisted living facility at which Eugene resides. Compl., Dkt. #1-1 at ¶ 12.

[4] Plaintiff labels both of the last two counts "Count IV." In response to the motions to dismiss, she withdraws the counts alleging "misfeasance" and "malfeasance" theories of relief. *See* Mem. Dkt. # 27 at 8; Mem., Dkt. # 28 at 7. She further requests leave to amend and add new theories of relief, *see id.*, but this request, buried in a brief and not made by motion, is a nullity.

4

civil conspiracy. Compl., Dkt. # 1-1. The defendants removed the case and now move to dismiss the plaintiff's claims.

## DISCUSSION

The defendants each move to dismiss on the basis of federal preemption by the Medicare Act and official immunity. They further argue that even if those defenses fail, the complaint fails to plead any plausible claims for relief.[5] And, in a supplemental filing, they jointly move to dismiss based on what they argue is a critical factual concession made in the plaintiff's response to the first motions to dismiss—namely, the unsworn "declaration" of Cynthia Hartman. The defendants argue that Cynthia's statement reveals that the family learned of the Notice in time to prevent Hartman's transfer to Church Creek, which, they say, would have prevented the lapse in services.

Rudek plainly disagrees that her claims are preempted or subject to federal-officer immunity, and she maintains that she states a claim for relief under her state-law theories. The precise contours of her arguments, however, are difficult to understand. Rather than argue, with supporting authority, that her claims are properly before this Court and not subject to the legal defenses raised by the defendants, she focuses on pointing out factual differences in the cases cited by the defendants, without substantively engaging with the legal arguments. Most of her arguments boil down to a central complaint that the defendants never explain "how a patient can pay for coverage for years, and the doctors can agree medically necessary treatments in rehabilitation must continue for optimal health care of the patient, but the insurance company can willfully and arbitrarily cancel the payment portion only of its contract." *E.g.*, Mem., Dkt. # 42 at

---

[5] Ultimately the Court finds it unnecessary to address whether the claims satisfy pleading standards because, assuming they do, the claims are subject to preemption and official immunity defenses.

7. While these arguments effectively convey the family's frustration concerning the defendants' actions, they are largely misplaced, because the coverage decision is not at issue. This unhelpful approach leaves the Court with little in the way of coherent legal argument by the plaintiff on the issues the defendants have raised, and results in waiver to the extent that the arguments are not sufficiently developed. *See, e.g., McCoy v. Maytag*, 495 F.3d 515, 525 (7th Cir.2007) (cursory and undeveloped arguments are deemed waived); *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (same).

## I.    Preemption

Both Presence and Humana contend that the federal Medicare Act expressly preempts all of the state-law theories of relief in Rudek's complaint. "Express preemption occurs when a federal statute explicitly states that it overrides state or local law." *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 696 (7th Cir. 2005).

In support of the express preemption argument the defendants cite the broad statutory preemption provision and its companion regulation: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA[6] plans which are offered by MA organizations under this part." 42 U.S.C.A. § 1395w-26(b)(3); 42 C.F.R. § 422.402 (same). Unlike in previous iterations of the Medicare Act, the current preemption provision[7] applies to "any" state law or regulation, not just those that are inconsistent with federal standards, so it would make little sense to think that this broader amended express preemption provision would reach state law only to the extent that might contradict the prescribed federal standards. It would be odder still to think that

---

[6] "MA" is Medicare Advantage. A provider of a Medicare Advantage plan is known as a Medicare Advantage Organization or "MAO."

[7] The provision was enacted as part of the Medicare Prescription Drug Improvement and Modernization Act of 2003.

Congress was concerned enough about the risks to federal standards governing MA plans posed by application of state statutes and regulations to expressly preempt their application but was unconcerned about the greater risks of inconsistency and variability posed by the application of state common law.

Although the Seventh Circuit has not addressed the scope of the Medicare preemption provision, it has in analogous contexts found that a federal statutes expressly preempt state common-law claims—not just statutes and regulations—where the preemption provision does not explicitly refer to such "common-law" claims. *See, e.g., McMullen v. Medtronic, Inc.,* 421 F.3d 482, 487 (7th Cir. 2005) (Food, Drug and Cosmetic Act express preemption of state law "requirements" extends to requirements imposed by common law as well as statute); *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 746-47 (7th Cir. 2002) (Federal Railroad Safety Act expressly preempted state-law failure-to-warn and negligence claims); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir. 1993) (Federal Insecticide, Fungicide, and Rodenticide Act express preemption provision for labeling and packaging requirements extends to common law claims). The same conclusion is warranted in the context of the Medicare preemption provision, as the Ninth Circuit held in *Uhm v. Humana, Inc*., 620 F.3d 1134, 1153-54 (9th Cir. 2010).

In *Uhm*, the Ninth Circuit addressed in detail the question of whether the Medicare preemption provision reaches state common-law causes of action. In that case, statutory consumer fraud claims were held to be preempted. *Id.* at 1150-52. The plaintiffs sued their Medicare Part D prescription drug plan provider, Humana, alleging violations of state consumer protection statutes, breach of contract, fraud, and unjust enrichment; the plaintiffs asserted that Humana misrepresented that they would be enrolled in the benefits plan and receive coverage for

7

their prescription drugs beginning January 1, 2006, the first day Part D sponsors could provide benefits. *See* 620 F.3d at 1138-39. The enrollment date passed, and the plaintiffs did not receive the materials necessary for obtaining their drug benefits; they were forced to buy their prescription medications out-of-pocket at costs higher than those provided by Humana's plan, although the premiums were still deducted from their accounts. *See id*. at 1139. Humana raised a number of defenses in its motion to dismiss, including, as relevant here, express federal preemption by the identical Part C preemption provision, which is also incorporated into Part D by operation of 42 U.S.C. § 1395w–112(g). The Ninth Circuit concluded that the state consumer protection claims were preempted by the Medicare Act because it closely regulates the content of marketing materials—the source of the alleged misrepresentations—and "application of these state laws could potentially undermine the Act's standards as to what constitutes non-misleading marketing." 620 F.3d at 1152.

As to the common-law claims of fraud and fraud in the inducement, the court concluded first that common-law claims are covered by the preemption provision. *Id* at 1155-56. CMS, the relevant agency, had interpreted the old preemption provision in that way, and Congress amended the provision in 2000 and 2003 without dispelling that interpretation. *Id*. at 1155. The fraud claims in *Uhm* would require a court to determine whether certain of Humana's statements were misleading; that could be done in such a way as to "directly undermine CMS's prior determination [required by regulation] that those materials were not misleading and in turn undermine CMS's ability to create its own standards for what constitutes 'misleading' information about Medicare Part D." *Id* at 1157. *See also, e.g., Phillips v. Kaiser Foundation Health Plan, Inc*., 953 F. Supp. 2d 1078 (N.D. Cal. 2011).

The Ninth Circuit's analysis in *Uhm* is persuasive and convinces the Court that the statutory preemption provision bars all of Rudek's state law claims—statutory and common law. Rudek seeks to hold the defendants responsible for the damage her father incurred as a result of the lack of timely, proper notice that would have allowed them to immediately appeal and maintain continuous care. She alleges that, apart from the termination of coverage, her father was harmed independently as a result of the defendants' failure to provide adequate notice of termination to a competent party and before the time for immediately appealing expired on July 19, 2011, at noon. The defendants contend that the Medicare Act wholly addresses the provider's duties with respect to a notice of termination of benefits, *see* 42 C.F.R. § 422.624(c)(1), and therefore, that no state-law causes of action can be brought to redress notice violations.

Even though Rudek's notice claim could be deemed collateral to the coverage decision, the Medicare statute and regulations make clear that it is nevertheless within the scope of standards promulgated under the Act and protected by the preemption provision. In particular, 42 C.F.R. § 422.624 sets forth detailed requirements for "[n]otifying enrollees of termination of provider services." Section 422.624(b) provides for advance written notice of termination[8] with a standardized notice issued on a particular timetable. Subsection (c) addresses improper notice, providing that delivery is not valid unless: "(1) The enrollee (or the enrollee's representative) has signed and dated the notice to indicate that he or she has received the notice and can comprehend its contents; and (2) The notice is delivered in accordance with paragraph (b)(1) of this section [timing] and contains all the elements described in paragraph (b)(2) of this section [required

---

[8] "Termination" is a defined term that means "the discharge of an enrollee from covered provider services, or discontinuation of covered provider services, when the enrollee has been authorized by the MA organization, either directly or by delegation, to receive an ongoing course of treatment from that provider," and it includes "cessation of coverage at the end of a course of treatment preauthorized in a discrete increment, regardless of whether the enrollee agrees that such services should end."

9

contents of the written notice.]" Finally, subsection (d) provides a remedy: "An MA organization is financially liable for continued services until 2 days after the enrollee receives valid notice as specified under paragraph (c) of this section." Federal regulations in addition to federal statutes have preemptive effect. *Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (7th Cir. 1995) ("'[A] federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.'").

Given the detailed regulations pertaining to the provision of notice, and the Medicare Act's broad preemption provision, there is no room for state-law claims seeking damages for the faulty provision of notice. Under § 422.624(d), until a "valid" notice is delivered, the provider is on the hook for services. It is far from clear that the defendants here complied with the Act's notice requirements,[9] but the plaintiff is not in this suit seeking to vindicate those particular, federal, rights; rather, her claims are based solely on state common-law duties of care as well as the Illinois Consumer Fraud Act.[10] Defining a provider's duties to enrollees under these standards creates a risk of inconsistent enforcement regimes among the various states and the

---

[9] The defendants make much of the fact that the health care surrogate form does not control decisions about insurance coverage—just medical treatment decisions—and therefore there is no problem with the delivery of notice to Eugene. *E.g.*, Presence Mem., Dkt. # 9 at 7. And it may well be true that the Illinois Healthcare Surrogate Act is not relevant because this was not a medical decision. But that does not mean that Eugene *was* competent to sign the Medicare non-coverage Notice; the allegations in the complaint say that he was not. Moreover, Humana itself conceded in a letter to Rudek, which is now made part of the pleadings, that the Notice should not have been delivered to Eugene. Thus Humana's argument that defendant Prise's actions "complied with the Medicare regulations governing NOMNCs and their delivery" assumes what has not been established. *See* Mem., Dkt. # 18 at 10. The question of preemption does not determine whether the defendants *complied* with Medicare rules and regulations.

[10] The Medicare Act provides an administrative review process scheme. Under 42 U.S.C. § 405(g) and 405(h), the procedure for judicial review of a decision of the Commissioner of Social Security is the "sole avenue" for claims arising under the Medicare Act. Hartman availed himself of the early stages of the § 405(g) process to secure reversal of Humana's decision to deny further coverage. The record does not reflect whether Hartman has asserted, or could assert, any administrative claim regarding the lack of treatment opportunity and attendant damages caused by improper notice of the coverage decision.

imposition of duties that vary from those imposed by the Medicare Act itself. It is that variation that a broad preemption provision aims to prevent.

Against these arguments, Rudek has not mustered any substantive arguments against preemption. Her briefs are inadequate on this issue. She argues simply that she exhausted her administrative remedies under Medicare with respect to the coverage decision (a *non sequitur*; again, coverage is not the issue) and offers nothing more than the wholly conclusory statement that state law claims are not preempted by the statute. *See* Mem., Dkt. # 27 at 1-2, 5, 7; Mem., Dkt. # 28 at 1-2, 5. The undeveloped arguments advanced by her retained counsel constitute a waiver.

For those reasons, the motions to dismiss are granted on the basis of express federal preemption. The plaintiff cannot state a claim under state law based on the provision of the notice required by Part C of the Medicare Act.

## II. Official Immunity

Alternatively, Presence and Humana each argue that they are entitled to official immunity because their allegedly wrongful conduct consists of discretionary acts within their official duties as *de facto* government agents carrying out the administration of the Medicare program. "In broad terms, official immunity protects those who, as the government representatives, carry out the government's directives." *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 706 F. Supp. 619 (N.D. Ill. 1989).

In *Westfall v. Erwin*, 484 U.S. 292, 295–97(1988), the Supreme Court held that a federal official is shielded from state-law tort liability for acts that (1) are discretionary in nature and (2) fall within the outer perimeter of the official's duties. The two-part *Westfall* test prescribed a functional inquiry: "immunity attaches to particular official functions, not to particular offices."

*Id.* at 296 n. 3. *Westfall*, to the extent applicable to federal officials, was superseded by the passage of Federal Employees Liability Reform and Tort Compensation Act in 1988, *see* 28 U.S.C. § 2679(d), but the *Westfall* test remains the federal common-law framework for determining when nongovernmental persons or entities are entitled to the same absolute immunity. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 72 (2d Cir. 1998); *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442, 1446-47 (4th Cir. 1996). Thus, courts have held that Medicare contractors are entitled to immunity for discretionary conduct that falls within the parameters of their official duties. *E.g., Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 351 (3d. Cir. 2012).

The defendants contend that the allegedly unlawful act at the heart of Rudek's claims—the delivery of the Notice to Eugene—is one that is required by the Medicare Act and implementing regulations and is therefore at the heart of Prise's official duties on behalf of the defendants who are Medicare providers with authority delegated by CMS. *See* 42 C.F.R. § 422.624. They therefore contend that she immune from liability in tort for her exercise of discretion (determining that Eugene rather than a representative could properly sign the Notice) in connection with that duty.

The Court agrees. All counts of the complaint rest on the allegedly improper delivery of notice to Eugene by Prise, on behalf of Presence and Humana. That action is within the parameters of the official duties of the "provider" under 42 C.F.R. § 422.624.[11] *See Murray v.*

---

[11] Rudek advanced no argument to the effect that Prise's act falls outside the scope of government duties or that she was not working on behalf of both Presence and Humana when she delivered the Notice. Indeed, Rudek did not challenge removal of this case based on the Federal Officer Removal Statute, which itself requires there to be a defendant "acting under" government authority and sued "for or relating to any act under color of such office." And, again, Rudek fails to address substantively the defendant's arguments for dismissal based on official immunity; she simply highlights factual differences between this case and the cases cited by the defendants,

*Northrop Grumman Information Technology, Inc.*, 444 F.3d 169, 175 (2d Cir. 2006) (contractor acted within scope of government duties when performing act required by federal regulation). Moreover, how and when the act was performed were within the provider's discretion, particularly as to choosing whom to supply with the Notice. *See id*. The provider cannot be sued under state consumer protection or tort law for actions within the scope of that official duty. Any liability of Humana or Presence is derivative of Prise's—Rudek does not argue otherwise—so the claims against them must also be dismissed based upon official immunity for negligence in the conduct of government business.

### III. Supplemental Motion to Dismiss

Although dismissal is warranted on the grounds of preemption and official immunity, the Court addresses the supplemental motion for the sake of completeness. This joint motion by Presence and Humana argues that Rudek pled herself out of court by attaching Cynthia's unsworn declaration to her response briefs; according to the defendants, the statement contradicts allegations in the complaint and affirmatively shows that the Hartman family's injuries were not caused by the improper delivery of the Notice to Eugene, but their own failure to timely initiate an appeal before Eugene left Presence for Church Creek. *See* Mem., Dkt. # 40 at 3-5. According to the defendants, by "allowing" Eugene's transfer after Cynthia learned of the Notice, the plaintiffs waived any claim to the two-day notice period required by the statute. *See generally Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006) ("[A] party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same").

---

without explaining the significance, if any, of those distinctions. *See* Mem., Dkt. # 27 at 9; Mem., Dkt. # 28 at 8.

The defendants' argument fails. The purported contradiction of fact is not material. Whereas the complaint states that the family learned of the Notice for the first time when Eugene arrived at Church Creek on July 20, Cynthia's statement clarifies that she found about the Notice minutes before Eugene left Presence that same day. It is undisputable based on the attachments to the pleadings that Hartman had only until noon on July 19—the day before the end of coverage—to initiate the immediate appeal of the termination of Medicare coverage for his rehabilitative services. On its face the Notice states that an immediate appeal must be made "no later than noon on the day before [July 20]." Yet, inexplicably, the defendants argue that when Cynthia received the notice, "Mr. Hartman still had the ability to seek an *expedited* appeal." Mem., Dkt. # 40 at 4. But according to the Notice itself, an "expedited appeal," unlike the "immediate appeal," does not allow continuation of benefits pending appeal. And indeed, the family pursued and won an expedited appeal, but that did not forestall the injuries caused by the coverage gap.

Under 42 C.F.R. § 422.624(d), an enrollee waives continuation of services, and payment by the insurer, if he agrees to being discharged less than two days after receiving the notice. The defendants argue that Cynthia's awareness of the termination before Eugene left Presence effects a waiver of the two-day notice requirement because, upon her receipt of notice, Cynthia "agreed to a discharge from Presence and a transfer to Church Creek." *Id.* at 5.

Even if this waiver provision arguably applies to the *second* delivery of the Notice—to Cynthia on the morning of the discharge, two days after Eugene had signed the form—the plaintiff has not pleaded facts that conclusively establish a waiver. The defendants make many factual assumptions, including that Cynthia was a representative to whom a Notice properly could be provided, that Cynthia—who was not the medical surrogate for Eugene—had the

authority to either consent or object to his discharge, and that she could waive the two-day notice requirement on Eugene's behalf. None of these facts is in the pleadings, even to the extent they include Cynthia's statement, and indeed, they are inconsistent with plaintiff's assertion that Estelle Hartman was the proper representative of Eugene for any treatment decision. Moreover, Cynthia was not provided with a "new" Notice that somehow re-started the time for immediate appeal; it had already expired when she was given a copy of the same Notice signed by her father, which required any such appeal to be made before noon on July 19.

Therefore, as the pleadings currently stand, whether Cynthia knew about the Notice shortly before the rest of the family on July 20 is of no significance to the allegations in the complaint. The core allegation is that Eugene's services would have continued if the family—not the incompetent Eugene—had been given the Notice in time to seek an immediate appeal with continuous coverage. Therefore, the plaintiff did not plead herself out of court by augmenting the allegations in the complaint in her responses to the motions to dismiss; Cynthia's statement does not conclusively establish that Rudek could not prevail.

\*     \*     \*

The defendants' initial motions to dismiss are granted pursuant to Rule 12(b)(6) because the plaintiff's claims, all of which are premised on the improper delivery of the Notice to Eugene, are preempted by federal law and subject to a defense of official immunity. The second, joint, motion to dismiss is denied because Rudek did not plead herself out of court by including facts in her responses that conclusively establish a waiver defense. Nevertheless, the dismissal of the complaint is with prejudice because the plaintiff cannot pursue these or any other state law claims against the defendants that are premised on the provision of notice of termination of coverage that is required by Medicare Part C.

15

Date: October 27, 2014

John J. Tharp, Jr.
United States District Judge